UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

GEOFFREY E. HAMMOND,

Plaintiff,

v.

SERGEANT SEALS,

Defendant.

Case No. 3:25-cv-00616-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Geoffrey E. Hammond, who is currently incarcerated by the Oregon Department of Corrections and is representing himself in this matter, brought this civil rights action under 42 U.S.C. § 1983. Generally, plaintiff asserts that while he was incarcerated at the Multnomah County Inverness Jail ("MCIJ") in June of 2024, he was assaulted by other inmates. The allegations underlying plaintiff's claims here are largely directed at defendant Shawn Seals, who at the time was a sergeant for the Multnomah County Sheriff's Office working at MCIJ. Plaintiff alleges that defendant "directed inmates to attack" him, used "excessive force against him" while he was restrained, and "questioned plaintiff" about the incident in a way that allegedly violated plaintiff's constitutional rights.[1] Currently pending is defendant's motion for summary judgment,

[1] Plaintiff's initial complaint also named several other deputies or officers from MCIJ. The claims against those defendants were previously dismissed because the complaint did not allege facts demonstrating that these defendants were personally involved in the alleged deprivation of plaintiff's constitutional rights or the facts as alleged otherwise did not state a claim against those individuals. *See* Order to Dismiss (Aug. 13, 2025) 3–4, ECF 15. Plaintiff did not seek leave to amend the complaint following that Order, thus only the claims against Seals remain. *See* Mot. Summ. J. 2 n.2, ECF 31 (describing case's procedural history).

in which defendant primarily asserts that plaintiff's claims fail as a matter of law because he failed to exhaust the administrative remedies available at MCIJ before bringing this suit, as required by the Prison Litigation Reform Act ("PLRA"). *See* Mot. Summ. J. 6–7, ECF 31.

## I. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324 (citing FED. R. CIV. P. 56(e)).

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## II. PLRA Exhaustion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion under the PLRA is mandatory. *McKinney v. Carey*, 311 F.3d

1198, 1199 (9th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). The purposes of the exhaustion requirement are two-fold: to protect administrative agency authority, by providing agencies the opportunity to correct their mistakes before being brought into federal court, and by encouraging adherence to agency procedures; and to promote efficiency because resolution by an agency is typically faster and more economical than litigation in federal court. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

"Failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove.' " *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)). The court employs a burden-shifting framework to analyze administrative exhaustion under the PLRA. First, the defendant must "prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). Next, "the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him[.]" *Id.* This can include "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* An inmate need only exhaust those remedies that are available "as a practical matter," meaning that the remedy must be "capable of use; at hand." *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005). Because exhaustion of remedies is an affirmative defense, the defendant has the burden of raising and proving that an incarcerated plaintiff failed to satisfy the PLRA's exhaustion requirement. *Jones*, 549 U.S. at 216. Although the burden of proof remains with the defendant, the defendant is entitled to summary judgment if undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust. *Albino*, 747 F.3d at 1166, 1172.

Here, defendant has satisfied the initial burden of showing that an administrative remedy was available to plaintiff and that he failed to exhaust his claims. According to MCIJ's records, plaintiff filed six grievances while incarcerated at MCIJ, and none of the grievances mention defendant, the June 2024 assault on plaintiff, the subsequent investigation into the assault, or any of the other events that are the basis of plaintiff's claims here.[2] Thus, defendant has carried the initial burden of showing an administrative remedy was available to plaintiff and he failed to use it to exhaust the claims he brings in this suit. *Williams*, 775 F.3d at 1191.

The burden now shifts to plaintiff to "show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him[.]" *Id.* This can be done by showing that plaintiff took "reasonable and appropriate steps" to pursue administrative remedies, but prison officials nonetheless interfered with the attempts to exhaust or failed to follow correct grievance protocol. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010).

Plaintiff admits that he did not file any grievances about the claims he asserts in this case against defendant; he states that he did not file any such grievance "due to the futility of submitting a grievance to the person who takes the grievance against himself, and due to a pattern and practice of intimidation."[3] Plaintiff also states that jail officials "consistently ignored" his grievances, Resp. 3, ECF 37, and that unspecified administrators "thwarted [him] from taking advantage of the grievance procedure through machination, misrepresentation, and intimidation."[4] Plaintiff's declaration then specifically asserts as follows:

- Plaintiff submitted a grievance seeking the return of money that was allegedly taken from him during his arrest that he

[2] Pedro Decl., Ex. 2 at 1–2, ECF 32-2.
[3] Hammond Decl., ¶ 58, ECF 38.
[4] Hammond Decl. ¶ 27, ECF 38.

believes should have "placed into [his] inmate account," and alleges that MCIJ officials "ignored" the grievance and "it took over a year for [his] public defender to get the prosecutor's officer to credit the funds[.]"[5]

- Plaintiff submitted a grievance in December of 2023 about his criminal case "regarding jurisdiction and procedure used by [the Multnomah County Sheriff's Office]" and "it was ignored."[6]

- Plaintiff submitted a grievance in March of 2024 regarding his "voting ballot" and "this was the only grievance which was ever resolved successfully."[7]

- Plaintiff submitted another grievance in March of 2024 regarding a problem he suspected with his lunch tray. According to plaintiff, he submitted the grievance form to "Officer Harwood" who apparently said he "didn't care, tore up the form, and took the tray."[8] Plaintiff then "submitted a second grievance in the mailbox."[9] Plaintiff asserts that he submitted a grievance appeal on this issue but "it was ignored."[10]

- Finally, plaintiff says that he "submitted a grievance directly by hand to defendant Seals" about a problem he suspected with "the box of soap in the bathroom."[11] Defendant allegedly "angrily asked what [plaintiff] expected [him] to do about it and tore up the form," and "instead of submitting the grievance . . . [defendant] just moved [plaintiff] to dorm twelve."[12]

These assertions are not sufficient to establish that the grievance procedure at MCIJ was ineffective, unobtainable, or was otherwise rendered unavailable to plaintiff such that his failure to exhaust the administrative remedies for the claims he now asserts against defendant. For one thing, the grievance procedure at MCIJ is designed to avoid the awkwardness, or "futility" as

---

[5] *Id.* ¶ 28.
[6] *Id.* ¶ 29.
[7] *Id.* ¶ 30.
[8] *Id.* ¶ 31.
[9] *Id.*
[10] *Id.* ¶ 32.
[11] *Id.* ¶ 33.
[12] *Id.*

plaintiff describes it, of delivering a grievance to the person that is the subject of the grievance. The MCIJ Handbook specifically directs AICs to fill out a grievance form and "put it into the grievance drop box in your housing area."[13] Furthermore, the Handbook states that while "[s]ome problems can be fixed by talking to a staff member or sending a service request form ('kyte') to the appropriate department," there is "no requirement that [AICs] talk to a staff member about [a] complaint."[14] In short, plaintiff's description of the two times where Seals and another officer allegedly "tore up" grievances that plaintiff tried to personally deliver to them shows that in these instances, plaintiff simply failed to follow the grievance procedure and place his grievance in the drop box as the Handbook directed. *See Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (explaining that AICs are "required to complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court"). In fact, plaintiff's own telling of the circumstances surrounding the March 2024 grievance regarding his lunch tray demonstrates how the process was designed to work; when plaintiff submitted a grievance to the "mailbox" and not directly to an officer, he received a response from the staff a few days later.[15] Thus, even crediting plaintiff's version of events around these two grievances as true, they do not establish that the grievance procedure was unavailable to plaintiff for the claims he now asserts against Seals regarding the assault and its aftermath.

Several of the grievances were not "ignored," as plaintiff asserts, but instead the responses to those grievances directed plaintiff to other agencies or people that could address plaintiff's concerns where jail officials could not take any action. In responding to plaintiff's

---

[13] Pedro Decl., Ex. 1 at 5, ECF 32-1.
[14] *Id.* at 4.
[15] Devaney Decl., Ex. 1 at 3, ECF 41-1.

grievance regarding the money seized during his arrest, the MCIJ Grievance Coordinator responded that plaintiff's issue "involve[d] another agency" and directed that plaintiff should "contact [the] Portland Police if [he is] requesting specific actions to be done that involve them."[16] The response to plaintiff's December 2023 grievance—which asserted that plaintiff's arrest and arraignment was "an unconstitutional inland extension of admiralty maritime jurisdiction"—explained to plaintiff that "complaints regarding [his] case/lawyer/non MCSO staff [are] not grievable through" the MCIJ grievance process and instructed plaintiff to contact his lawyer if he had "concerns relating to [his] criminal case."[17] Plaintiff does not explain how the responses to these grievances—neither one of which related to the conditions of his confinement or complained about the action of an MCIJ staff member—that directed plaintiff to other avenues or institutions rendered the grievance procedure "unavailable" for his complaints about defendant Seals.

To the extent that plaintiff seems to be suggesting that his failure to exhaust the claims at issue in this suit should be excused based on his perception that his previous grievances were not successful in resolving his complaints to his satisfaction, numerous cases have rejected that argument. *See, e.g.*, *Sheridan v. Reinke*, 611 F. App'x 381, 383 n.1 (9th Cir. 2015) (explaining that an AIC's "subjective belief that the use of the grievance system would be futile, without more, does not excuse his failure to exhaust") (citing *Sapp v. Kimbrell*, 623 F.3d 813, 827 (9th Cir. 2010)); *Osborne v. Peters*, No. 2:20-cv-02260-MC, 2022 WL 2904395, at *3 (D. Or. July 22, 2022), *aff'd,* No. 22-35663, 2024 WL 239951 (9th Cir. Jan. 23, 2024) ("[T]o further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the

---

[16] Pedro Decl., Ex. 2 at 1, ECF 32-2.
[17] Devaney Decl., Ex. 1 at 2, ECF 41-1.

remedy is not available.") (quoting *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011)); *Matthews v. Carey*, No. 2:18-cv-01618-SB, 2021 WL 1759264, at *7 (D. Or. May 4, 2021) ("An AIC's belief that his grievance will be denied is not a sufficient reason to pick and choose when to file a grievance.")

Finally, to the extent that plaintiff relies on nonspecific allegations of "intimidation" or "misrepresentation" as a reason why his failure to exhaust should be excused, an AIC must do more than allege a "generalized fear of retaliation" to establish that the grievance procedure was effectively unavailable. *See Pryor v. Webb*, No. 2:11-cv-0884-VAP-PLA, 2013 WL 3270870, at *5 (C.D. Cal. June 24, 2013) ("[P]laintiff has shown no more than a generalized fear of retaliation, which is insufficient to excuse him from exhausting his administrative remedies."); *Ketchens v. Rocha*, No. 1:05-cv-00131-OWW-LJO, 2006 WL 1652658, at *2 (E.D. Cal. June 14, 2006) ("[A] generalized fear of retaliation is not an exception to the exhaustion requirement."); *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 998 (6th Cir. 2004) ("[N]onspecific allegations of fear and [a] subjective feeling of futility do not excuse [an AIC's] failure to exhaust his administrative remedies."); *Harrison v. Stallone*, No. 9:06-cv-00902 LEK-GJD, 2007 WL 2789473, at *6 (N.D.N.Y. Sept. 24, 2007) ("If every plaintiff bringing a retaliation claim could have the exhaustion requirement excused by alleging a fear of further retaliation, it would create a general exception to exhaustion for retaliation claims.").

Because plaintiff did not file any grievances relating to his claims in this suit against defendant and has not established that the grievance procedure was effectively unavailable to him, plaintiff failed to exhaust his current claims before filing suit, and defendant is entitled to summary judgment on all of plaintiff's claims. Accordingly, plaintiff's claims are dismissed without prejudice. *See Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) ("If the district

court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."), *overruled on other grounds by Albino*, 747 F.3d at 1166.

**ORDER**

Defendant's Motion for Summary Judgment (ECF 31) is granted because plaintiff failed to exhaust the available administrative remedies before filing this suit, and plaintiff's claims are therefore dismissed without prejudice.

DATED September 24, 2026.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge